FLORENCE FUGATE, Conservator of the Estate and Person of Thomas Fugate, Incompetent, Plaintiff-Appellant, *v.* THE CITY OF PEORIA *et al.*, Defendants-Appellees.

Third District   No. 75-416

Opinion filed December 29, 1976.—Rehearing denied February 2, 1977.

Frederick W. Allen, of Peoria (Gary Clark, of counsel), for appellant.

McConnell, Kennedy, Quinn & Morris, of Peoria (Daniel L. John, of counsel), for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

At about 11 p.m. on February 12, 1971, Carl Carter was driving past St. Francis Hospital in Peoria when he hit Thomas Fugate, a pedestrian crossing guard who was standing in a pedestrian crosswalk assisting two hospital employees across Glen Oak Avenue on their way to work. Fugate suffered broken bones and permanent brain damage. Plaintiff Florence Fugate, as conservator for her husband, brought a personal injury suit against both Carter and the City of Peoria. After a jury trial, a verdict for

$400,000 was returned against Carter, and a verdict of no liability was returned in favor of defendant City of Peoria. Plaintiff appeals from the judgment entered on the verdicts, and seeks a new trial.

In Count I of her amended complaint, plaintiff alleged that the defendant City of Peoria committed one or more of the following:

"(a) Negligently designed, planned or constructed a pedestrian crosswalk so that its use created a condition that was not reasonably safe.

(b) Negligently failed to adequately illuminate a pedestrian crosswalk.

(c) Negligently failed to provide pedestrian crossing signals and traffic lights at a pedestrian crosswalk when such signals and lights were necessary to warn of a condition which was not reasonably safe."

At the close of all the evidence, the city moved for a directed verdict. After arguments were heard, plaintiff withdrew allegations (b) and (c), and the court then denied the motion.

According to the testimony at trial, in 1963 the city established a crosswalk controlled by a traffic signal in front of the mid-block main entrance to St. Francis Hospital. This signal was not timed as a normal traffic light, but was activated by a pedestrian when he wished to cross the avenue. In 1967 the main entrance was closed during construction of an addition to the hospital, and, at the hospital's request, the city moved the crosswalk traffic signal down the block near the Children's Hospital entrance. In late 1968, after the main entrance was reopened and an enlarged parking lot across the street was put in use, the hospital requested the city to return the traffic signal to the main entrance location.

The City Council had originally approved installation of a traffic signal at the main entrance crosswalk. Charles Wegel, former city traffic engineer, testified that the removal of the signal was intended to be temporary and that he had intended to return the signal to the main entrance location. He had the main entrance crosswalk painted on the street surface in 1969 as a part of the process of relocating the signal. Wegel left his position with the city in May of 1970 and was succeeded by James Hauck. Hauck testified that he held discussions concerning relocation of the crosswalk signal but that it had not been installed at the main entrance on February 12, 1971, the date of the accident.

When the pavement markings were completed in 1969, a crossing guard was stationed at the main entrance crosswalk, and at night he was equipped with an orange vest and gloves, reflective badges, and two red flashlight wands. The overhead traffic signal remained at the Children's Hospital entrance although there were no crosswalk markings on the pavement at that location.

On the night Fugate was injured, he was standing in the crosswalk to

stop traffic so two hospital employees could cross the street. Defendant Carter came up the hill on Glen Oak Avenue from the south and struck Fugate, hurling him through the air. Carter did not stop and testified that he was feeling the effect of the beers he had drunk during the evening.

Fugate became comatose as a result of a brain injury. His condition was stable at the time of trial, but he was not expected to regain consciousness during his lifetime, and he required constant nursing care.

On appeal from the judgment in favor of the defendant city, plaintiff contends that the trial court erred in its application of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—101 *et seq.*). The allegation of negligence which was submitted to the jury was couched in the language of section 3—103 of the Act, which is as follows:

> "§3—103. (a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. *The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe.*" (Emphasis added.)

■■ Plaintiff first contends that the court erred in refusing to give her instruction 4A which set out the city's duty to maintain its property in a reasonably safe condition under section 3—102 of the Act. However, the issue of maintenance of the crosswalk was not within the scope of the pleadings, and the court properly refused this instruction. (*Fisher v. Bogdanovic* (3d Dist. 1973), 10 Ill. App. 3d 311, 293 N.E.2d 176.) Plaintiff also claims that the court erroneously refused her instruction no. 8 which stated that the city had a duty to use ordinary care for Fugate's safety. After examining the record, we find that plaintiff waived any error in the court's ruling by failing to include it in her post-trial motion as required by Supreme Court Rule 366. (Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(iii).) In addition, a party cannot on appeal, complain of an action he consented to, as indicated by the record (record, at 255). (*Lindquist v. Friedman's, Inc.* (1937), 366 Ill. 232, 238, 8 N.E.2d 625; 2 Ill. L. & Pr. *Appeal and Error* §672 (1953).) Thus, we find no reversible error in the court's rulings on instructions.

Plaintiff also assigns as error the court's refusal to permit any closing argument relating to the traffic signal or the lack of a traffic signal. This restriction was imposed after plaintiff withdrew her allegations that the city had negligently failed to provide a traffic signal at the crosswalk.

Plaintiff contends that she was denied an opportunity to argue her theory that the crosswalk was in an unsafe condition because the city had failed to return the signal to the main entrance location after the crosswalk was re-established.

Defendant responds that the restriction was appropriate to prevent any improper argument that would infringe upon the city's immunity from liability for failure to provide traffic signals, as set out in section 3—104 (Ill. Rev. Stat. 1975, ch. 85, par. 3—104):

> "(a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating signs.
>
> (b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care."

■■ As best we can determine from the record, plaintiff acquiesced in the ruling of the trial court without objection. The ruling emanated from plaintiff's voluntary withdrawal of that part of her complaint relating to the traffic signal issue. During closing argument, the court sustained an objection to a statement by plaintiff's counsel that the city had moved the traffic signal in 1967; however, plaintiff has not suggested in either her post-trial motion or on appeal that the ruling on that objection was erroneous. We therefore affirm the ruling of the trial court without considering the merits of plaintiff's argument.

■■ Plaintiff also contends that the verdict awarding her $400,000 damages against defendant Carter was grossly inadequate. The evidence showed that Fugate was 53 years old at the time of the accident and was earning $6,000 per year. His medical bills totaled $112,000, and nursing home care cost $8,800 annually. No evidence of life expectancy was introduced. Under the circumstances, we believe the damages awarded were well within the range of the evidence.

Accordingly, the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., and BARRY, J., concur.