608 N.E.2d 882 (1993)
154 Ill.2d 201
181 Ill.Dec. 631
Carl CURATOLA, Appellant,
v.
The VILLAGE OF NILES, Appellee.
No. 73474.
Supreme Court of Illinois.
January 28, 1993.
Bruce D. Goodman, Bradley D. Steinberg and Margaret P. Griffiths, Steinberg, Polacek & Goodman, Lewis, Davidson & Heatherington, Ltd., Chicago, for appellant.
*883 Robert M. Zelek, Chicago, for amicus curiae, Illinois Trial Lawyers Ass'n.
Kelly R. Welsh, Corp. Counsel, Chicago, (Lawrence Rosenthal, Mardell Nereim and Stephen Glockner, of counsel), for amicus curiae, City of Chicago.
Richard T. Ryan and Mark F. Smolens, Flynn, Murphy, Ryan & Seyring, Chicago, for appellee.
Justice FREEMAN delivered the opinion of the court:
Plaintiff, Carl Curatola, filed a negligence action in the circuit court of Cook County against defendant, the Village of Niles (Niles). Curatola sought to recover damages sustained when he stepped from the rear of his parked truck onto the street which is owned and maintained by Niles. Defendant filed a motion for summary judgment (Ill.Rev.Stat.1987, ch. 110, par. 2-1005) pursuant to section 3-102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev.Stat.1987, ch. 85, par. 3-102(a)). Section 3-102(a) provides that "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used * * *." Ill.Rev.Stat.1987, ch. 85, par. 3-102(a).
In support of the motion for summary judgment, defendant presented plaintiff's deposition testimony which revealed the following. On March 2, 1983, Curatola was working as a semi-truck driver, making deliveries of general commodities to various businesses. When Curatola arrived at Joseph Electronics, one of that firm's employees directed him to position his truck so that the employees could unload it. Curatola parallel parked the truck alongside the southern curb of Elizabeth Street so that the rear driver's side of the trailer was about six inches from the curb. The driveway leading to the business was to the rear of the trailer. Curatola exited his truck, opened the rear door of the trailer, went inside and moved cartons to the rear of the trailer for the firm's employees to unload. After the cartons were removed from the truck, Curatola closed the trailer's door, stepped down to the truck's lower bumper and then to the street below. As he stepped onto the street, he twisted his foot on the edge of a pothole and fell down. The pothole appeared to Curatola to be about seven feet from the curb. Photographic evidence in support of the motion revealed that the hole was located directly in front of the mouth of the driveway.
According to the trial court, such evidence supported the view that Curatola's vehicle was parked in front of the driveway and, hence, he could not be considered an "intended and permitted" user of the street under the rationale of Di Domenico v. Village of Romeoville (1988), 171 Ill.App.3d 293, 121 Ill.Dec. 436, 525 N.E.2d 242 (operator and passengers ingressing and egressing legally parked vehicle are permitted and intended users of immediate street to whom duty owed under Act). The trial court thus granted defendant's motion for summary judgment. Curatola subsequently moved the court to reconsider, presenting evidence that his vehicle did not block or interfere with the use of the driveway, nor did its parking violate municipal ordinances. The trial court, however, denied Curatola's motion to reconsider, citing a recent decision, Vlahos v. City of Chicago (1990), 198 Ill.App.3d 911, 145 Ill.Dec. 42, 556 N.E.2d 660, which rejected the reasoning of Di Domenico and held that a municipality owes no duty to a pedestrian who steps off a curb into the street where no crosswalk exists.
Plaintiff subsequently appealed. The appellate court affirmed (230 Ill.App.3d 743, 174 Ill.Dec. 313, 598 N.E.2d 945). The court relied on Vlahos as well as expressed the view that, under the Act, the scope of a municipality's duty does not include "deliverymen utilizing the street as an unloading zone." (230 Ill.App.3d at 746, 174 Ill.Dec. *884 313, 598 N.E.2d 945.) We granted plaintiff's petition for leave to appeal (134 Ill.2d R. 315(a)) and allowed the filing of amicus curiae briefs from the City of Chicago (City) and the Illinois Trial Lawyers Association.
The sole issue presented for review is whether the trial court properly granted summary judgment determining that defendant owed plaintiff no duty to maintain the street area immediately around his parked vehicle. We review as well the related order denying reconsideration which was entered prior to the notice of appeal. See Sears v. Sears (1981), 85 Ill.2d 253, 258, 52 Ill.Dec. 608, 422 N.E.2d 610 (order denying post-judgment motion is not itself a judgment and is not appealable, but is reviewable as related order entered prior to notice of appeal); see also Archer Daniels Midland Co. v. Barth (1984), 103 Ill.2d 536, 538, 83 Ill.Dec. 332, 470 N.E.2d 290 (a motion to reconsider falls within the category of post-judgment motions).
Having fully considered the issue, we reverse and remand.

DISCUSSION
Curatola asserts that the evidence he presented in support of the motion to reconsider established that his vehicle was legally parked at the time of his fall. The Village concedes that no evidence was presented contravening this fact. (See Fooden v. Board of Governors of State Colleges & Universities (1971), 48 Ill.2d 580, 587, 272 N.E.2d 497 (when well-alleged facts are not contradicted by counter-affidavit, they must be taken as true).) Consequently, we consider Curatola's vehicle as being legally parked when he fell.
According to Curatola, Niles had a duty to maintain the street area immediately around his legally parked vehicle under a rationale expressed in Di Domenico and followed in Torres v. City of Chicago (1991), 218 Ill.App.3d 89, 161 Ill.Dec. 31, 578 N.E.2d 158 (municipality had duty to maintain street immediately around legally parked vehicle, as operator who exited and fell in nearby pothole was intended and permitted user of street). Curatola asserts that Wojdyla v. City of Park Ridge (1992), 148 Ill.2d 417, 170 Ill.Dec. 418, 592 N.E.2d 1098, decided after the appellate court's decision in the instant case, also approvingly cites to and follows Di Domenico. Curatola maintains that under a reasonable interpretation of the Act, usage of the street immediately around a legally parked vehicle by its operator and occupants is both intended and foreseeable, as there is no other practical means of entering or exiting such vehicle. He further maintains that recognition of a duty to maintain that particular area imposes no unwarranted burden on municipalities. The Illinois Trial Lawyers Association expresses the view that a municipality's duty of care must logically encompass persons who legally park their vehicles on city streets, and that the extent of that duty is both limited and clear.
Niles, having conceded that Curatola's vehicle was legally parked, also concedes that he may be considered a "permitted" user under section 3-102. Niles argues, however, that he was not an "intended" user under this provision because he was injured while engaged in or subsequent to using the street as a commercial loading dock. Niles cites to Ramirez v. City of Chicago (1991), 212 Ill.App.3d 751, 156 Ill. Dec. 842, 571 N.E.2d 822, Greene v. City of Chicago (1991), 209 Ill.App.3d 311, 153 Ill. Dec. 899, 567 N.E.2d 1357, and Vance v. City of Chicago (1990), 199 Ill.App.3d 652, 145 Ill.Dec. 724, 557 N.E.2d 494, for support. Niles further argues that to discern "intended" use, a court must look to the property itself. (Wojdyla, 148 Ill.2d at 426, 170 Ill.Dec. 418, 592 N.E.2d 1098.) Niles asserts that, clearly, under this view, its streets were not intended for use as commercial loading docks. Niles claims it owed no duty to Curatola, nor should this court recognize such a duty under these circumstances. Imposition of such duty, according to Niles, would be burdensome to municipalities and an unwarranted extension of the Act.
*885 The City, as amicus curiae, requests us to reconsider the view expressed by this court in Wojdyla that a person exiting his or her legally parked vehicle is an intended user of the street immediately around it. (Wojdyla, 148 Ill.2d at 422, 170 Ill.Dec. 418, 592 N.E.2d 1098.) Conceding that such usage is foreseeable, the City yet maintains that because vehicles primarily use parking lanes, it would be enormously burdensome to maintain those lanes for the use of pedestrians in the same condition as sidewalks. The enormity of that burden, the City further maintains, is dispositive of the fact that a municipality does not intend pedestrian usage in those areas. Furthermore, according to the City, the scope of the claimed duty is large and ill-defined.
To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed a duty of care, a breach of that duty, and an injury proximately caused by the breach. (Curtis v. County of Cook (1983), 98 Ill.2d 158, 162, 74 Ill.Dec. 614, 456 N.E.2d 116.) Whether or not the duty of care exists is a question of law to be determined by the court (Pelham v. Griesheimer (1982), 92 Ill.2d 13, 18-19, 64 Ill.Dec. 544, 440 N.E.2d 96) and thus may be determined on a motion for summary judgment (Wojdyla, 148 Ill.2d at 421, 170 Ill.Dec. 418, 592 N.E.2d 1098).
A local governmental entity's duty is limited by the language of section 3-102(a) of the Act (Ill.Rev.Stat.1987, ch. 85, par. 3-102(a)). For a person to be protected under this provision, he or she must be an intended and permitted user of the property controlled by the local public entity. (See Wojdyla, 148 Ill.2d at 422, 170 Ill.Dec. 418, 592 N.E.2d 1098; see also Curtis, 98 Ill.2d at 164-65, 74 Ill.Dec. 614, 456 N.E.2d 116 (language of section 3-102 "evinces a legislative intent to extend duty of care only to those persons by whom" local government intended property to be used).) Because the Act is in derogation of the common law, it must be strictly construed against the local public entity. See Reynolds v. City of Tuscola (1971), 48 Ill.2d 339, 342, 270 N.E.2d 415.
In considering the scope of the duty delineated by this provision, Illinois courts have developed the general principle that a municipality owes no duty of care to a pedestrian who walks in or crosses a public roadway outside a crosswalk. See Deren v. City of Carbondale (1973), 13 Ill.App.3d 473, 300 N.E.2d 590 (under the Act and the common law, liability of municipality with respect to public streets is limited to their use as streets, not as sidewalks); Risner v. City of Chicago (1986), 150 Ill.App.3d 827, 104 Ill.Dec. 94, 502 N.E.2d 357 (no duty of care owed to plaintiff struck by bus as he crossed street midblock where no crosswalk existed); Swett v. Village of Algonquin (1988), 169 Ill.App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594 (no duty of care owed to plaintiffs crossing highway, where no crosswalk, when en route to restaurant parking lot); Mason v. City of Chicago (1988), 173 Ill.App.3d 330, 123 Ill.Dec. 109, 527 N.E.2d 572 (no duty of care owed to plaintiff crossing residential street midblock while en route to parked car); Crutchfield v. Yellow Cab Co. (1989), 189 Ill.App.3d 1091, 137 Ill.Dec. 200, 545 N.E.2d 961 (no duty of care owed to plaintiff, disembarking from bus and crossing street where no crosswalk); Vlahos v. City of Chicago (1990), 198 Ill.App.3d 911, 145 Ill.Dec. 42, 556 N.E.2d 660 (no duty owed to plaintiff who stepped off curb where no crosswalk when en route to driver's side of doubleparked truck); Greene v. City of Chicago (1991), 209 Ill.App.3d 311, 153 Ill. Dec. 899, 567 N.E.2d 1357 (no duty of care owed to plaintiff, stepping off curb where no crosswalk and en route to friend's house); Ramirez v. City of Chicago (1991), 212 Ill.App.3d 751, 156 Ill.Dec. 842, 571 N.E.2d 822 (no duty of care owed to plaintiff, cleaning curb area of street outside crosswalk); Wojdyla, 148 Ill.2d 417, 170 Ill.Dec. 418, 592 N.E.2d 1098 (no duty of care owed to plaintiff crossing highway where no crosswalk when en route to parked car); Gabriel v. City of Edwardsville (1992), 237 Ill.App.3d 649, 178 Ill.Dec. *886 309, 604 N.E.2d 565 (no duty owed to plaintiff, walking a few steps into street where no crosswalk when en route to son's house).
These cases employ a variety of rationales. In several instances, the plaintiff was not considered to be a permitted and intended user of the street under section 3-102 because he was a "jaywalker" whose use was, nonetheless, considered foreseeable. (See Risner, 150 Ill.App.3d 827, 104 Ill.Dec. 94, 502 N.E.2d 357; Mason, 173 Ill.App.3d 330, 123 Ill.Dec. 109, 527 N.E.2d 572.) In the majority of these cases, however, the plaintiff's use of the street was not considered to be permitted and intended because he or she crossed or walked in the street where there was no crosswalk and only vehicular use of the street was intended. (Crutchfield, 189 Ill.App.3d 1091, 137 Ill.Dec. 200, 545 N.E.2d 961; Vlahos, 198 Ill.App.3d 911, 145 Ill.Dec. 42, 556 N.E.2d 660; Greene, 209 Ill.App.3d 311, 153 Ill.Dec. 899, 567 N.E.2d 1357; Gabriel (1992), 237 Ill.App.3d 649, 178 Ill.Dec. 309, 604 N.E.2d 565.) In a few instances, the defendant municipality has arguably known of the customary use of the roadway by pedestrians and acquiesced in that usage (Deren, 13 Ill.App.3d 473, 300 N.E.2d 590; Swett, 169 Ill.App.3d 78, 119 Ill.Dec. 838, 523 N.E.2d 594), or the plaintiff pedestrian's use of the street was entirely lawful (Ramirez, 212 Ill.App.3d 751, 156 Ill.Dec. 842, 571 N.E.2d 822). Plaintiffs in these cases have attempted to characterize their use of the street as being either an allowable "walkway" (Deren, 13 Ill.App.3d 473, 300 N.E.2d 590), or permitted, despite the absence of crosswalks. In a similar vein, plaintiffs in Vance v. City of Chicago (1990), 199 Ill.App.3d 652, 145 Ill. Dec. 724, 557 N.E.2d 494, and Wolowinski v. City of Chicago (1992), 238 Ill.App.3d 639, 179 Ill.Dec. 441, 606 N.E.2d 273, have attempted to create an exception to the established, general principle in the case of bus riders who exit CTA buses within the limited street area where bus passengers are allowed to disembark under the Chicago Municipal Code (Chicago Municipal Code § 27-276(c) (1982)). Plaintiffs, in these bus rider cases, were unsuccessful primarily because they failed to establish their permitted use of the street.
Fundamentally, however, the basis for the general principle which underlies these decisions is that our courts consider that "the street is for use by vehicular traffic not pedestrians" (emphasis omitted) except under certain limited circumstances, i.e., "where defendant has provided crosswalks or the like." (Risner, 150 Ill.App.3d at 831, 104 Ill.Dec. 94, 502 N.E.2d 357.) This court recently reiterated this position in Wojdyla, 148 Ill.2d 417, 170 Ill.Dec. 418, 592 N.E.2d 1098, where it acknowledged the changing usages of urban highways and noted that, in contrast to the past, "the developer of modern highways now creates the design for the benefit of automobiles and other vehicles, and rarely for pedestrians." (Wojdyla, 148 Ill.2d at 423-24, 170 Ill.Dec. 418, 592 N.E.2d 1098.) Yet even as the general rule is stated, the exception is allowed.
One exception to the general principle was originally recognized in Di Domenico v. Village of Romeoville (1988), 171 Ill. App.3d 293, 121 Ill.Dec. 436, 525 N.E.2d 242. In Di Domenico, the plaintiff fell into a hole in the street while walking to obtain some items from the trunk of his legally parked vehicle. The court properly reasoned that lawfully permitted curbside parking necessarily entails pedestrian use of the street immediately around the parked vehicle. Because the operator's permissible use (parking) required him to walk in the street in order to enter and exit his vehicle, the court concluded that the local entity must have intended that use. "It defies common sense to conclude that such local entities did not contemplate and intend that the operator of the vehicle along with passengers would use the street area around the parked vehicle for ingress and egress to and from their vehicle." (Di Domenico, 171 Ill.App.3d at 295-96, 121 Ill.Dec. 436, 525 N.E.2d 242.) The court thus held that the plaintiff was an intended and permitted user of the street to whom the local entity owed a duty of care under the Act.
In Wojdyla, the court cited approvingly to the Di Domenico holding, yet it distinguishe *887 that case on the basis of its facts. The decedent Wojdyla was injured as he walked across the traffic lanes of a highway while en route to his parked vehicle. The plaintiff attempted to rely upon the exception recognized in Di Domenico. The court determined, however, that the decedent was not an intended user of the highway even though his vehicle may have been lawfully parked as was the case in Di Domenico. Rejecting the plaintiff's contrary assertion, this court found that the location of the plaintiff's use of the street was a key factor in determining intended use. The court also stated that vehicular use of parking lanes "mandates" or requires pedestrians' usage of the immediate street for egress to and ingress from the vehicle. (Wojdyla, 148 Ill.2d at 425, 170 Ill.Dec. 418, 592 N.E.2d 1098.) In view of these dual considerations, any possible relationship between the decedent's use of the street for parking (even though possibly lawful) and his use of the street as a pedestrian was simply too tenuous for that use to have been intended by the municipality. The decedent's use of the roadway was not, as in Di Domenico, mandated by his parking nor did it occur immediately around his vehicle.
As stated in Wojdyla, we need look no further than the property itself which the plaintiff was using when injured to determine its intended use. (Wojdyla, 148 Ill.2d at 426, 170 Ill.Dec. 418, 592 N.E.2d 1098.) Parking lanes are designated by signs and meters or painted blocks on the pavement. These indicators of parking are not designed exclusively for interpretation by drivers who remain seated in their vehicles. Parking meters, in particular, require pedestrian use of the curb and the street immediately around the parked vehicle. In Wojdyla, the traffic lanes were marked and regulated by vehicular traffic signs and signals for the benefit of automobiles rather than pedestrians. Consequently, no duty of care was owed the decedent by the municipality both because of the clear indications regarding the property's intended use and because his use of the roadway as a pedestrian was not mandated by or immediately proximate to his parking.
Vlahos, 198 Ill.App.3d 911, 145 Ill.Dec. 42, 556 N.E.2d 660, relied upon by the City and the appellate court in the instant case, misapprehended Di Domenico and further failed to discern a salient fact upon which Di Domenico turned. In Vlahos, the plaintiff fell after stepping from the curb to proceed to the driver's side of his doubleparked truck. Vlahos rejected the Di Domenico analysis, finding that Mason, 173 Ill.App.3d 330, 123 Ill.Dec. 109, 527 N.E.2d 572, presented facts similar to Di Domenico and Mason`s reasoning was more persuasive. Mason, however, concerned a jaywalker crossing the street to reach her parked vehicle. Mason relied on the general principle that no duty is owed to pedestrians outside crosswalks, while Di Domenico developed an exception to that principle on the basis of a lawfully parked vehicle's operator's necessary use of the immediately surrounding street. In sum, Vlahos reads Di Domenico too broadly, rejects its reasoning, and incorrectly assumes that the decision is at odds with the general principle stated in Mason, Risner and their progeny. Furthermore, Vlahos fails to attach significance to the fact that the plaintiff in Di Domenico was engaged in a permitted use of the street (lawful parking), whereas the plaintiff in Vlahos was not. Vlahos, 198 Ill.App.3d at 912, 145 Ill.Dec. 42, 556 N.E.2d 660.
We note that several of the previously cited cases which have relied on the general principle do not reject Di Domenico but merely find the case distinguishable. See Vance, 199 Ill.App.3d at 655, 145 Ill.Dec. 724, 557 N.E.2d 494; Greene, 209 Ill. App.3d at 313, 153 Ill.Dec. 899, 567 N.E.2d 1357; Ramirez, 212 Ill.App.3d at 754, 156 Ill.Dec. 842, 571 N.E.2d 822; Gabriel (1992), 237 Ill.App.3d 649, 178 Ill.Dec. 309, 604 N.E.2d 565; see also Princivalli v. City of Chicago (1990), 202 Ill.App.3d 525, 147 Ill.Dec. 850, 559 N.E.2d 1190 (which reversed grant of summary judgment as premature under circumstances arguably similar to Di Domenico).
In Jorgensen v. Whiteside (1992), 233 Ill.App.3d 783, 174 Ill.Dec. 925, 599 N.E.2d 1009, our appellate court recently recognized *888 an exception to the general principle under circumstances analogous to those in Wojdyla. In Jorgensen, the plaintiff was standing in an area designated by the city as a bus loading zone. She had just completed loading her luggage into a bus when she was struck by another bus. The court found that the plaintiff was in a designated zone, using the area for its intended purpose and was therefore an intended and permitted user to whom a duty was owed under the Act. Comparing the factual situation to that of Di Domenico, the court rejected the defendant municipality's argument that the zone was intended exclusively for vehicular use. As in Di Domenico, the court found that the plaintiff's use of the area for standing must have been recognized as a necessary use and was, therefore, an intended use.
While we cite approvingly to Jorgensen`s essential replication of the Di Domenico analysis, we do not hold that every pedestrian use of the street which is necessary to a permitted use of the street is itself both permitted and intended. Nor do we hold that necessity alone is the measure of whether such use is intended. (Cf. Torres, 218 Ill.App.3d at 96, 161 Ill.Dec. 31, 578 N.E.2d 158 (Gordon, J., dissenting) (legal distinction based on avoidability or unavoidability of use lacks clarity).) The narrow exception we recognize here concerns only the permitted and intended use of the street immediately around a legally parked vehicle by its exiting and entering operators and occupants.
We are not persuaded by the City's argument that the magnitude of any burden to maintain parking lanes is indicative of the fact that municipalities do not intend pedestrian use in these limited areas. A financially taxed municipality with a great deal of vehicular traffic and parking lanes does no less intend for operators to use such areas than does a small, wealthy municipality.
We are also not persuaded that the allowed exception is large and ill-defined. Any duty to maintain the street area immediately around lawfully parked vehicles for those exiting and entering them will be bounded by the parameters of parking lanes. Notably, a local governmental entity's duty to maintain crosswalks for pedestrians is similarly bounded. (See Fugate v. City of Peoria (1976), 44 Ill.App.3d 692, 3 Ill.Dec. 314, 358 N.E.2d 712.) Further, as in the case of crosswalks or the determination of passenger status in common carrier cases, ascertaining boundaries should not prove difficult. (See Katamay v. Chicago Transit Authority (1972), 53 Ill.2d 27, 289 N.E.2d 623 (whether a passenger on a common carrier has ceased to be passenger depends upon varying circumstances, principally the location of boarding or deboarding).) In cases where factual issues are presented concerning whether a particular plaintiff is owed this duty, such issues may be determined by the jury upon proper instruction. Katamay, 53 Ill.2d at 31-32, 289 N.E.2d 623.
We do not consider lightly the claim by Niles and the City that a duty to maintain the streets for persons exiting and entering lawfully parked vehicles is burdensome. Today, the resources of many local governmental entities are reduced even as insurance costs rise. Thus, we carefully consider the relevant factors pertaining to the imposition of a duty: (1) foreseeability that the defendant's conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon the defendant. (See Lance v. Senior (1967), 36 Ill.2d 516, 518, 224 N.E.2d 231.) As the parties admit and our case law demonstrates, it is entirely foreseeable as well as likely that such injuries will occur. We note that municipalities are at present charged with the duty to maintain parking lanes for vehicles. We fail to appreciate that costs to maintain those areas for the operators and occupants getting into and out of those same vehicles are prohibitive of any duty to those persons. Further, contrary to the City's assertion, the standard of reasonable care to maintain parking lanes for such users is not equivalent to the standard of care owed to pedestrians on sidewalks. (See Zeh v. Wheeler (1986), 111 Ill.2d 266, 275, 95 Ill.Dec. 478, 489 N.E.2d 1342 (standard of reasonable care is relative to the type of property and its extent of use).) We note, too, that regardless of the burden, *889 the entire community ultimately bears the risk. To that end, the risk under these circumstances is best spread among all members of the community by imposing such duty upon local entities. "`[D]uty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (See W. Keeton, Prosser & Keeton on Torts § 53, at 358 (5th ed. 1984); see also Kirk v. Michael Reese Hospital & Medical Center (1987), 117 Ill.2d 507, 526-27, 111 Ill.Dec. 944, 513 N.E.2d 387 ("a court's determination of duty reflects the policy and social requirements of the time and community").) We believe that public policy and social considerations of these times and of our community require that a duty to maintain the immediate street around lawfully parked vehicles be placed upon local governmental entities.
In the present case, Curatola's tractor-trailer was lawfully parked and thus he was a permitted user of the street. At the time he was injured, he was using the street to exit the rear of his trailer following its unloading by other persons. Whether he moved cartons within the trailer to facilitate that unloading is not significant. Under these circumstances, Curatola's use of the immediately surrounding street to exit his vehicle was permitted and intended. Curatola's use of this area of the street was mandated by virtue of the fact that he had parked his vehicle and had to exit or reenter it. See Wojdyla, 148 Ill.2d at 425, 170 Ill.Dec. 418, 592 N.E.2d 1098; Di Domenico, 171 Ill.App.3d at 295, 121 Ill.Dec. 436, 525 N.E.2d 242.
Even if we consider that Curatola was injured as he was standing in the street, unloading his vehicle, his use of the street immediately around his parked vehicle would nonetheless be permitted and intended. As stated in Wojdyla, "[w]ere we to measure the duty of care by the intent of individuals traveling over these various properties, we would effectively negate section 3-102(a) of the Tort Immunity Act, for no longer would the intended use by the municipality be controlling. Instead, the intent of any particular individual would determine whether the municipality owed a duty of care." (Wojdyla, 148 Ill.2d at 425-26, 170 Ill.Dec. 418, 592 N.E.2d 1098.) Whether Curatola was removing commercial items from his truck or removing groceries (see Torres, 218 Ill.App.3d 89, 161 Ill.Dec. 31, 578 N.E.2d 158) is not determinative of whether his use of the street was intended under the Act. Notably, also, the unloading in these circumstances was not prohibited by the Illinois Vehicle Code (Ill.Rev.Stat.1987, ch. 95½, par. 1-100 et seq.).
There being no dispute that Curatola was using the street in a foreseeable manner (Ill.Rev.Stat.1987, ch. 85, par. 3-102(a); see Wojdyla, 148 Ill.2d at 428, 170 Ill.Dec. 418, 592 N.E.2d 1098 (duty owed to intended and permitted foreseeable users)), we conclude that Niles had a duty to maintain the street immediately around Curatola's legally parked vehicle. The trial court's determination that no duty of care existed was in error and entry of summary judgment was improper.
For the reasons stated, we reverse the judgments of the circuit and appellate courts, and remand the cause to the circuit court for further proceedings.
Reversed and remanded.