MIGUEL MONTANO, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)  No. 1—98—3885

Opinion filed October 26, 1999.—Rehearing denied November 22, 1999.

Cooney & Conway, of Chicago (Timothy R. Ocasek, of counsel), for appellant.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joseph H. Kim, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff, Miguel Montano (Montano), appeals an order granting summary judgment in favor of defendant, the City of Chicago (City), and an order denying Montano's motion for a rehearing in a negligence action alleging that the City failed to maintain its alleys in a reasonably safe manner. On appeal, Montano contends that the City owed him a duty of care as a delivery person who was unloading a truck legally situated within an alley. For the reasons set forth below, we affirm.

On December 7, 1995, Montano, a delivery person for Columbia Furniture, was scheduled to deliver a couch to a house at 5915 South Damen Avenue. Montano used a truck that was eight feet wide to deliver the couch. When he arrived at the house, he pulled into the first alley south of the intersection of 59th and Damen because of its proximity to the house and stopped in the middle of the alley, which was less than 16 feet wide.

Once stopped in the alley, Montano turned off the ignition and exited the truck. He walked around to the back of the truck and opened the rear door. He and his coworker then entered the truck to remove the couch. While Montano and his coworker were each holding one end of the couch, Montano backed out of the truck and stepped onto the rear step of the truck. As Montano stepped off the rear step onto the pavement of the alley, he twisted his foot on some uneven pavement surrounding a sewer cover and fell down.

On October 3, 1996, Montano filed a complaint against the City, alleging that it negligently: (a) allowed the alley to be in a dangerously uneven and broken condition; (b) failed to make the alley flush; (c) failed to repair the alley although the City knew or should have known of its dangerous condition; and (d) failed to warn Montano of the dangerous and defective nature of the alley. On October 23, 1996, the City filed a motion to dismiss paragraph 7(d) of the complaint, which alleged that the City failed to warn Montano of the dangerous or defective condition of the alley. The trial court granted the City's motion on January 15, 1997, finding that the City did not have a duty to warn Montano pursuant to section 3—104 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3—104 (West 1994)) and struck paragraph 7(d) from the complaint.

On January 16, 1998, the City filed a motion for summary judgment, asserting that the City was immune from liability pursuant to section 3—102(a) of the Tort Immunity Act (745 ILCS 10/3—102(a) (West 1994)). On April 9, 1998, the trial court granted the City's motion, holding that the Tort Immunity Act precluded liability because Montano's use of the alley was neither intended nor permitted. The court reasoned that, since Montano violated section 9—64—130 of the Chicago Municipal Code (Code) (Chicago Municipal Code § 9—64—130 (1990)) while he was parked in the alley by not leaving at least 10 feet unobstructed, his use of the alley was unlawful and not intended or permitted. Accordingly, the City did not owe Montano a duty to repair or maintain the alley.

Montano filed a motion for a rehearing on May 11, 1998, arguing that he did not violate section 9—64—130 of the Chicago Municipal

Code because technically his vehicle was "standing" in the alley, while the Code only prohibited "parking" in the alley if the vehicle did not leave at least 10 feet unobstructed; therefore, he was a permitted and intended user. The trial court denied Montano's motion on September 16, 1998. Montano now appeals this order as well as the April 9, 1998, order granting summary judgment.

■ Montano cannot appeal the trial court's September 16, 1998, order denying rehearing. An order denying a postjudgment motion is not itself a judgment and is not an appealable order. *Relander v. Phoenix Mutual Life Insurance Co.*, 262 Ill. App. 3d 525, 527-28, 636 N.E.2d 944 (1994). However, since the underlying judgment and the postjudgment motion are closely related, an appeal of the underlying judgment carries with it the ruling on the postjudgment motion. *Relander*, 262 Ill. App. 3d at 528. Thus, although we can only review the April 9, 1998, order granting summary judgment for the City, our review of this order will indirectly include the denial of Montano's motion for a rehearing.

■ A summary judgment order is reviewed *de novo. In re Estate of Hoover*, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993). Summary judgment is proper when the pleadings, depositions, admissions and affidavits establish that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996). Summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the movant is free and clear from doubt. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 948, 627 N.E.2d 202 (1993).

■ To recover in a negligence action, a plaintiff must allege a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Lipper v. City of Chicago*, 233 Ill. App. 3d 834, 836, 600 N.E.2d 18 (1992). Whether the defendant owed the plaintiff a duty of care is a question of law for the court. *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6, 570 N.E.2d 315 (1991).

■ The City's duty to maintain its property is limited by section 3—102(a) of the Tort Immunity Act, which provides as follows:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in rea-

sonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3—102(a) (West 1994).

According to the statute, the City has a duty of ordinary care to maintain its property only for people who are both intended and permitted users of the property. As explained by the supreme court in *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524, 702 N.E.2d 535 (1998), although intended users of property are permitted by definition, permitted users are not necessarily intended users. See also *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160, 651 N.E.2d 1115 (1995). Therefore, in the present case, we must determine whether Montano was an intended user of the alley when he was injured while unloading the couch from his truck.

Montano asserts that he was an intended user because his truck was not "parked" in violation of section 9—64—130 of the Chicago Municipal Code, which provides:

"(a) It shall be unlawful to park any vehicle in any alley for a period of time longer than is necessary for the expeditious loading, unloading, pick-up or delivery of materials from such vehicle.

(b) It shall be unlawful to park a vehicle in an alley in such a manner or under such conditions as to leave available less than 10 feet of the width of the roadway for the free movement of vehicular traffic or to block the entrance to any abutting property." Chicago Municipal Code § 9—64—130 (1990).

Montano claims that, according to the definitions listed in the Illinois Vehicle Code (625 ILCS 5/1—156, 1—194 (West 1994)), his truck was standing, not parked, in the alley. He then argues that he was not required to leave at least 10 feet in the alley free from obstruction because the ordinance does not apply to standing vehicles.

■ The City asserts that Montano has waived this argument since he did not raise the issue of whether the ordinance applies to standing vehicles in any written form until his motion for rehearing. The City correctly contends that it is improper to raise a new legal issue or factual argument in a motion for rehearing. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 166, 709 N.E.2d 249 (1999). However, a claim of waiver may itself be waived. *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 308, 666 N.E.2d 4 (1996). The City waived its right to argue that the "standing" argument was not timely when the City substantively responded to the argument in its written reply to Montano's motion for rehearing. Consequently, we will address Montano's "standing" argument.

■ When an ordinance defines its own terms, "those terms must be construed according to the definitions given [to] them in the act."

*Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 558, 578 N.E.2d 600 (1991). We cannot use definitions in the Illinois Vehicle Code to construe the terms of an ordinance in the Chicago Municipal Code. Instead, we will use section 9—4—010 of the Chicago Municipal Code to define the term "standing." The section provides in pertinent part:

> " 'Standing (to stand)' means the halting of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in receiving or discharging passengers; provided, that, an operator is either in the vehicle or in the immediate vicinity, so as to be capable of immediately moving the vehicle at the direction of a police officer or traffic control aide." Chicago Municipal Code § 9—4—010 (eff. July 12, 1990).

■ Under this definition, a delivery vehicle is standing so long as the driver does not leave the immediate vicinity of the vehicle after loading or unloading it. We find that a vehicle's status depends on the driver's intent when he or she initially stops the vehicle. A vehicle does not transform from a standing vehicle to a parked vehicle the moment the driver leaves the immediate area surrounding the vehicle. Thus, Montano's truck was never standing if, at the time he initially stopped the truck, he intended to leave the vicinity in order to complete the delivery.

We cannot assume that Montano's truck was standing solely because Montano's injury prevented him from leaving the truck and assisting his coworker with the delivery. Montano has failed to provide any facts which indicate that, but for the accident, he either would have remained with the truck while his coworker made the delivery or parked the truck prior to carrying the couch into the house. Montano has an affirmative duty to bring forth all facts and evidence that satisfy his burden of proving the existence of a cognizable cause of action. *Golden v. Marshall Field & Co.*, 134 Ill. App. 3d 100, 102, 479 N.E.2d 805 (1985). Although Montano need not prove that his vehicle was standing at this stage of the litigation, he must present enough evidence to create a genuine issue of material fact. *Estate of Henderson v. W.R. Grace Co.*, 185 Ill. App. 3d 523, 530, 541 N.E.2d 805 (1989).

Since Montano's truck was not standing in the alley, he was required to comply with section 9—64—130 of the Chicago Municipal Code. Montano admits that section 9—64—130(a) applied to him because it regulates the parking in alleys for the purpose of loading and unloading. However, Montano claims that section 9—64—130(b) did not apply to him because it only prohibits parking in the alley without leaving 10 feet unobstructed. In essence, Montano asserts that the term "park" has different meanings in sections (a) and (b). Montano contends that the term "park" in section (b) follows the def-

inition of "park" in section 9—4—010 but that the term "park" in section (a) refers to standing or a similar status.

The definition of "park" listed in section 9—4—010 provides:

" 'Parking (to park)' means the standing of an unoccupied vehicle otherwise than temporarily for the purpose of and while actually engaged in loading or unloading property or passengers." Chicago Municipal Code § 9—4—010 (eff. July 12, 1990).

Under the definition, a vehicle cannot be "parked" if the driver is engaged in the "expeditious loading, unloading, pick-up or delivery of materials" that is permitted under section 9—64—130(a). This contradiction indicates that the drafters did not intend the term "park" in section 9—64—130(a) to follow the definition in section 9—4—010. Instead, through section 9—64—130(a), the drafters were attempting to regulate a specific type of activity—a temporary stop in an alley for the purpose of loading, unloading, picking up, or delivering materials.

Further, we cannot infer that the drafters of the ordinance intended different meanings of the same term within two adjacent parts of the same ordinance. When the same word is used twice in close proximity, there is a presumption that the word has the same meaning in both places. *Chicago Area I.B. of T. Health & Welfare Trust Fund v. Thomas S. Zaccone Wholesale Produce, Inc.*, 874 F. Supp. 188, 191 (N.D. Ill. 1995). Thus, we find that section 9—64—130(b) applies to any vehicle stopped in an alley when the driver is loading, unloading, picking up, or delivering materials.

If a person violates a municipal ordinance, that person is not an intended user of the property. *Lipper*, 233 Ill. App. 3d at 838; *Prokes v. City of Chicago*, 208 Ill. App. 3d 748, 750, 567 N.E.2d 592 (1991). Montano admits that he unloaded the couch from a truck that was 8 feet wide and that the alley in which the truck was parked was less than 16 feet wide. These dimensions dictate that Montano could not have left 10 feet unobstructed while parked in the alley. Consequently, Montano violated section 9—64—130 and was not an intended user of the alley.

Montano disagrees with this conclusion and argues that, even if he violated section 9—64—130, his use of the alley was still permissible and intended. Montano compares his situation to one in which a car is parked in a metered space but the time on the meter has expired. We do not find that situation to be analogous to the case at bar. Parking at a meter is legal and only becomes illegal once the time expires on the meter. In contrast, it is never legal to park in the alley without leaving at least 10 feet unobstructed. Therefore, it is more accurate to compare Montano's situation to parking in front of a fire hydrant, because that, too, is never legal.

■ We also hold that, even if Montano did not violate section 9—64—130, he would not be an intended user of the alley. The City does not intend every use not directly prohibited by ordinance. The City may permit a particular use of its property, but the City may not intend such use.

Illinois courts have established a general principle that a municipality does not owe a duty of care to pedestrians who walk in a roadway outside a sidewalk. *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208, 608 N.E.2d 882 (1993). Unless a municipality has provided crosswalks or the like for pedestrians, a roadway is intended solely for vehicular traffic. *Curatola*, 154 Ill. 2d at 210. Although an alley is not a thoroughfare, it is a roadway designed for vehicular traffic. *Khalil v. City of Chicago*, 283 Ill. App. 3d 161, 163-64, 669 N.E.2d 1189 (1996).

Courts have recognized a narrow exception to this general rule, holding that pedestrians entering or exiting legally parked vehicles on the street are intended and permitted users of the street in the area around the vehicle. See *Curatola*, 154 Ill. 2d 201, 608 N.E.2d 882; *Grove v. City of Park Ridge*, 240 Ill. App. 3d 659, 608 N.E.2d 421 (1992); *Torres v. City of Chicago*, 218 Ill. App. 3d 89, 578 N.E.2d 158 (1991); *Di Domenico v. Village of Romeoville*, 171 Ill. App. 3d 293, 525 N.E.2d 242 (1988). The courts created this exception because, "when a municipality provides a parking space on a street, it manifests an intent that people should walk in the area immediately around the parking space." *Sisk v. Williamson County*, 167 Ill. 2d 343, 351, 657 N.E.2d 903 (1995). A municipality clearly manifests its intent that people park their vehicles and enter or exit their vehicles in areas where it displays signs, meters and pavement markings that designate parking spaces. *Sisk*, 167 Ill. 2d at 351; see also *Khalil*, 283 Ill. App. 3d at 164.

Montano attempts to compare his truck to a vehicle that is legally parked on a street in order to take advantage of this narrow exception to the Tort Immunity Act. He claims that, like legally parked vehicles on the street, the City intended vehicles to stand in its alleys; therefore, the City also intended pedestrians to walk in the area around the standing vehicles. In order to determine whether the City manifested such intent, we must look to the particular property involved. *Boub*, 183 Ill. 2d at 525. The presence or absence of pavement markings, signs, and other physical manifestations is an indication of the City's intent regarding the property. *Boub*, 183 Ill. 2d at 528. See also *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426, 592 N.E.2d 1098 (1992).

In *Boub*, the supreme court found that a bicycle rider was not an intended and permitted user of a road and bridge because no affirma-

tive physical manifestations on the properties evidenced that intent. The court stated:

> "[W]e believe that the presence or absence of pavement markings and signs is relevant here in determining whether the plaintiff was an intended user of the road and bridge where the accident occurred. In the present case, there is nothing in the roadway or bridge that would suggest that it was intended for use by bicycles. No special pavement markings or signs indicated that bicyclists, like motorists, were intended to ride on the road or bridge, or that bicycles, rather than vehicles, were the intended users of the route. [Citation.]" *Boub*, 183 Ill. 2d at 528.

Similarly, in *Wojdyla*, the supreme court concluded that a pedestrian was not an intended user of a portion of a highway when, in order to get to his car, he crossed outside the crosswalk through the middle of the highway. The court explained:

> "To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use. That pedestrians may be permitted to cross the street mid-block does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose. Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas. Those areas do not, however, include a highway in mid-block." *Wojdyla*, 148 Ill. 2d at 426.

Likewise, in *Sisk*, the supreme court held that a pedestrian was an unintended user of a country road. The plaintiff was driving his automobile on a country road when his car struck a concrete bridge. When he exited his vehicle to investigate the damage, he stepped off the edge of the pavement, which was covered by weeds, and fell to the creek bed below. The court distinguished cases that found a pedestrian to be an intended user of the street surrounding a legally parked vehicle by explaining:

> "In contrast, there are no such manifestations to indicate that Williamson County intended pedestrians to walk on its country roads, much less the specific road and bridge complained of by plaintiff in the case at bar. As the appellate court noted, there are no walkways or crosswalks on rural country roads such as the county-line road in this case. Further, many country roads are

gravel roads and often have no shoulder. We believe that the inference to be drawn from these facts, if any, is that municipalities do not intend that pedestrians walk on rural country roads. Although it may become necessary at times for pedestrians to walk on country roads, such use is not a manifestation of the local municipality's intent that pedestrians walk on its country roads or an undertaking by the municipality to make country roads free from defects that might injure pedestrians." *Sisk*, 167 Ill. 2d at 351-52.

In the case at bar, the record indicates an absence of any affirmative physical manifestations in the alley such as signs or pavement markings. There were neither signs designating the area a loading zone nor pavement markings denoting the area was for standing vehicles. Following the supreme court's reasoning in *Boub, Wojdyla*, and *Sisk*, the absence of an affirmative manifestation by the City confirms that it did not intend Montano to allow his truck to stand in the alley and, therefore, did not intend for him to use the area of the alley surrounding his standing truck.

Without physical manifestations, we cannot assume that the City intended vehicles to stand in its alleys or intended the exiting and entering of pedestrians from these vehicles because such an intention would subject the City to a large and ill-defined burden. "Any duty to maintain the street area immediately around lawfully parked vehicles for those exiting and entering them [is] bounded by the parameters of parking lanes." *Curatola*, 154 Ill. 2d at 214. With an alley, on the other hand, the City would have a duty to reasonably maintain all areas without limitation. Before imposing such a standard of care, it is appropriate to consider the potentially massive costs to the City from liability as well as repairs. *Boub*, 183 Ill. 2d at 535. See also *Vaughn*, 166 Ill. 2d at 164.

Montano argues that the property's historical purpose, rather than affirmative manifestations, should define the property's intended use. He claims that alleys were constructed to give delivery vehicles access to the back of a property and, in light of this purpose, Montano was an intended user. The historical purpose of a property is not dispositive of its intended use. *Boub*, 183 Ill. 2d at 531-32. The court may refer to any historical practices when ascertaining the intended use of a property, but historical practice is not "the touchstone by which intended use must be measured." *Boub*, 183 Ill. 2d at 532. Accordingly, any relevance the historical purpose of alleys had on the determination of whether Montano was an intended user is undermined by the fact that the City did not manifest any intent regarding standing vehicles.

Moreover, alleys have been used historically for reasons other than for deliveries. For instance, alleys have provided and continue to provide residents with access to their garages, backyards, and refuse containers. Historical purposes such as these did not sway our opinion in *Khalil*, 283 Ill. App. 3d at 164, when we held that a pedestrian was not an intended user of an alley. We concluded that, although pedestrians have used alleys for many purposes, those purposes were not intended by the municipality and "even frequent use by pedestrians cannot convert the alley into a sidewalk." *Khalil*, 283 Ill. App. 3d at 164.

For the aforementioned reasons, we affirm the trial court's order that granted defendant's motion for summary judgment.

Order affirmed.

McBRIDE and GORDON, JJ., concur.