# Illinois Official Reports

## Appellate Court

---

### *Harden v. City of Chicago*, 2013 IL App (1st) 120846

---

| | |
|---|---|
| Appellate Court Caption | YVONNE HARDEN, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-0846 |
| Filed | November 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the broken leg plaintiff suffered when she tripped and fell on a hole in a metal plate that was in the street she was crossing, summary judgment was properly entered for defendant city on the ground that the path chosen by plaintiff was outside the marked crosswalk and she was not an intended and permitted user of the spot where she fell, notwithstanding her contention that the crosswalk lines were covered by snow at the time of her injury, since the metal plate was clearly not within the marked crosswalk, the facts did not present an issue of an unmarked crosswalk, and the fact that crossing outside the crosswalk was foreseeable did not change the intended use. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-L-14214; the Hon. William Gomolinski, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Peter F. Higgins, of Lipkin & Higgins, of Chicago, and Lynn D. Dowd, of Law Offices of Lynn D. Dowd, of Naperville, for appellant. |
|---|---|
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Palmer and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Yvonne Harden appeals the trial court's grant of summary judgment in favor of the defendant the City of Chicago (City) on her personal injury action which alleged that the City was negligent when she slipped and broke her leg on a large metal plate while crossing a street in Chicago. On appeal, she argues that she was an intended and permitted user of the street when she crossed near the crosswalk, which was obscured by falling snow and heavy pedestrian traffic, and as a result, the City was liable for her injuries.

¶ 2    In December 2008, plaintiff filed her initial complaint against the City. Plaintiff filed an amended complaint in October 2010. She raised the same claims against the City and also named three new defendants, MCI Metro Access Transmission Services (MCI), LLC, Level 3 Communications, LLC (Level 3), and John Burns Construction Company (John Burns).[1]

¶ 3    Following discovery, including depositions, interrogatories and other filings, the facts of the case are as follows. At approximately 8 a.m. on December 1, 2008, plaintiff exited a Chicago Transit Authority (CTA) bus at the northeast corner of Adams Street and upper Wacker Drive. Plaintiff worked at 200 South Wacker, located on the southwest corner of the intersection. She intended to cross south on Adams and then west on Wacker.

¶ 4    Plaintiff testified at her deposition that there was a "dusting" of snow on the ground and it just started to snow heavily. Plaintiff stated that there was no ice on the ground and the amount of snow was less than half an inch. When asked if she could not designate the marked

---

[1]The trial court granted summary judgment motions for MCI, Level 3 and John Burns. Plaintiff did not appeal those orders and these defendants are not a party to this appeal.

crosswalk, plaintiff could not recall "if every area of everything [the marked crosswalk] was covered. But it was a dusting covering the street and the sidewalk of snow." Plaintiff also said that there was heavy pedestrian traffic. Plaintiff testified that she was wearing black leather boots with rubber soles that had grips for snow. The boots had an inch to an inch and a half heel, but the heel was wide and was not a pump heel. Plaintiff denied that she had any problem with vision despite the snow.

¶ 5     Plaintiff testified at her deposition that there was a metal plate on the street at that intersection. The plate had been there for at least a year. The plate was approximately four feet wide, six feet long and two inches thick. The plate had two holes, each approximately four inches in diameter, located in the center. Plaintiff said that the plate was right next to the curb at the northeast corner of the intersection. She described the crosswalk as having three lines with one line as the stop line. She stated that the metal plate "actually covers the one of the two lines, not the stop line. *** [T]he metal plate is between the stop line and the two crosswalk lines."

¶ 6     Plaintiff stepped off the curb to cross Adams with the flow of pedestrian traffic when the pedestrian light was in her favor to cross. Plaintiff stated that she was in the middle of the pedestrian traffic with people on all sides of her. She started to cross the street based on her prior experience at that intersection. Plaintiff admitted that she would have been crossing "between the stop line and *** the furthest east marked white line of the crosswalk." She stepped down with her left foot from the curb and then her right foot. Her right foot started to slip and it "got caught" in a hole of the metal plate. She stated that she could not "honestly tell *** which hole it was," but she believed "it was the hole to the left," which was further east. Plaintiff heard a crack and felt extreme pain. She felt too much pain to lift her foot so she laid on the ground and moved herself out of the street.

¶ 7     Plaintiff had been crossing the street with a colleague, Deron White. White called an ambulance after her fall. Plaintiff was taken to Northwestern Hospital and treated for a broken tibia, fibula, and ankle.

¶ 8     In her first amended complaint, plaintiff alleged that the City "had a duty to exercise ordinary care to maintain the streets under its ownership, management, maintenance, and/or control in a reasonably safe condition." The City should have known that the location where plaintiff stepped on Adams Street "was in a defective or dangerous condition because of the steel plate, which condition posed an unreasonable risk of injury to persons lawfully walking across Adams Street," including plaintiff. As a proximate cause of one or more negligent acts and/or omissions by the City, plaintiff sustained injuries of a personal and pecuniary nature.

¶ 9     In January 2012, the City filed a motion for summary judgment. In its motion, the City argued that it did not owe plaintiff a duty of care because she was not an intended and permitted user of the street when she crossed Adams Street outside of the marked crosswalk lines pursuant to section 3-102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-102 (West 2008)). The City based this argument on the location of the metal plate outside of the marked crosswalk lines, which was identified by plaintiff at her deposition.

¶ 10    In response, plaintiff asserted that she was unable to see the marked crosswalk lines because of the snow and the high volume of pedestrian traffic. She contended that the case should be considered an unmarked crosswalk case and she was within the statutory definition of a crosswalk, and even if she was outside the crosswalk, she was an intended user of the street where she crossed. She attached her own affidavit and an affidavit from White to her response. In her affidavit, plaintiff stated that she could not see the crosswalk lines because of snow and pedestrians. She said she knew she stepped into the street where the crosswalk lines were located based on her familiarity with that corner.

¶ 11    White stated in his affidavit that he was behind plaintiff as they started to cross the intersection. He described the conditions of the intersection as "it was snowing heavily and the sidewalks, streets and crosswalks were covered with snow. We were also surrounded by other pedestrians in front, behind and on each side of us." He said that he could not see the lines of the crosswalk, but he knew he was in the area of the crosswalk because he was "between the end of the curb for Wacker to the west, and the building line for the building on the northeast corner of Adams and Wacker to the east." He was familiar with where the crosswalk was located because he had traveled this way many times. He observed plaintiff take one or two steps, make a painful cry, stop suddenly and go down. He "did not look to see exactly where she fell, whether she was in between the lines of the crosswalk or not. To the best of [his] recollection, and based upon [his] prior experience at this intersection, [plaintiff] stepped off the curb in the area where the crosswalk lines would be if they were visible."

¶ 12    In February 2012, the trial court granted the City's summary judgment motion in a written order. The court found that the intersection contained a marked crosswalk and plaintiff "crossed somewhere before the stop line where the crosswalk lines are." Plaintiff crossed on the metal plate. Plaintiff testified that a photograph exhibit accurately showed the condition and location of the metal plate, but the exhibit "clearly shows that the metal plate which plaintiff alleges caused her fall was not within the marked crosswalk." Further, the court noted that plaintiff's response and affidavits did "little to contradict plaintiff's prior clear and unequivocal admissions and testimony especially with respect to Harden's clear identification of the location of the plate" in her deposition. The court concluded that "plaintiff's chosen path to cross the street in question was not in the City's intended and permitted use of the street" under section 3-102.

¶ 13    This appeal followed.

¶ 14    On appeal, plaintiff argues that the trial court erred in granting the City's motion for summary judgment because a crosswalk should not be limited to marked lines when those lines were impossible to see at the time of injury. In the alternative, plaintiff asserts that a question of material fact exists regarding the location of her fall.

¶ 15    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). We review cases involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 16    "In order to recover in an action for negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury to the plaintiff proximately caused by the breach." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). "The question of the existence of a duty is a question of law, and in determining whether a duty exists, the trial court considers whether a relationship existed between the parties that imposed a legal obligation upon one party for the benefit of the other party." *Sameer*, 343 Ill. App. 3d at 85. "In considering whether a duty exists in a particular case, a court must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden." *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991).

¶ 17    The City argued in its summary judgment motion that its duty is limited by section 3-102. According to the City, it owed no duty to plaintiff because she was not an intended and permitted user of the street because she was outside of the marked crosswalk when her fall occurred. Plaintiff contends on appeal that the definition of a crosswalk is not as narrow as the City's interpretation, especially when the marked lines are invisible. She asserts that the plaintiff was within the statutorily defined crosswalk at the time of her fall and was an intended and permitted user of the street.

¶ 18    Section 3-102(a) of the Tort Immunity Act provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." 745 ILCS 10/3-102(a) (West 2008).

¶ 19    Under section 3-102(a), a municipality owes a duty of care to intended and permitted users of municipal property. 745 ILCS 10/3-102(a) (West 2008). " '[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user.' " *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 616-17 (2010) (quoting *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998)). "[T]he duty of a municipality depends on whether the use of the property was a permitted and intended use" and "[w]hether a particular use of property was permitted and intended is determined by looking to the nature of the property itself." *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 162-63 (1995). "[A]s the statute makes clear, it is the intent of the local public entity that is controlling, for the duty expressed by section 3-102(a) is limited to those 'whom the [local public] entity intended and permitted to use the property.' " *Boub*, 183 Ill. 2d at 525 (quoting 745 ILCS 10/3-102(a) (West 1996)). The relevant factors to consider regarding the imposition of a duty are: "(1) foreseeability that the defendant's conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon the defendant." *Curatola v. Village of Niles*, 154 Ill. 2d 201, 214 (1993).

"Because the [Tort Immunity] Act is in derogation of the common law, it must be strictly construed against the local public entity." Curatola, 154 Ill. 2d at 208.

¶ 20 "The general rule that has evolved in Illinois with regard to the duty of a municipality to maintain its streets in a reasonably safe condition is that, since pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who attempt to cross a street outside the crosswalks." *Vaughn*, 166 Ill. 2d at 158. Illinois courts have carved a limited exception for pedestrians entering and exiting a lawfully parked vehicle as intended and permitted users of the street immediately surrounding the vehicle. See *Curatola*, 154 Ill. 2d at 210-11. In contrast, a municipality had no duty for a pedestrian who crossed the roadway outside a crosswalk to reach a lawfully parked vehicle. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426 (1992). Also, no duty exists for a municipality when a pedestrian exits a city bus into the street. See *Vance v. City of Chicago*, 199 Ill. App. 3d 652 (1990); *Wolowinski v. City of Chicago*, 238 Ill. App. 3d 639 (1992). As the supreme court observed in *Wojdyla*:

"To determine the intended use of the property involved here, we need look no further than the property itself. The roads are paved, marked and regulated by traffic signs and signals for the benefit of automobiles. Parking lanes are set out according to painted blocks on the pavement, signs or meters on the sidewalk or parkway, or painted markings on the curb. Pedestrian walkways are designated by painted crosswalks by design, and by intersections by custom. These are the indications of intended use. That pedestrians may be permitted to cross the street mid-block does not mean they should have unfettered access to cross the street at whatever time and under whatever circumstances they should so choose. Marked or unmarked crosswalks are intended for the protection of pedestrians crossing streets, and municipalities are charged with liability for those areas." *Wojdyla*, 148 Ill. 2d at 426.

¶ 21 Here, plaintiff was injured while crossing Adams Street when her right foot was caught in a hole located on a metal plate. Plaintiff identified a photograph exhibit of the subject metal plate at her deposition. She stated that the plate was in the same location, but the photograph did not reflect the weather and pedestrian traffic at the time of her injury. Plaintiff described the metal plate as 6 feet long, 4 feet wide and 2 inches thick. In the photograph, the metal plate is located in the street and flush with the curb lengthwise, its western edge is adjacent to the outer marking of the crosswalk and its eastern edge is beyond the vehicle stop line. According to the photograph, no part of the metal plate is located in the marked crosswalk. There are two holes located in the center of the metal plate. Plaintiff testified that she believed her right foot was caught in the hole on the left, which is farther east. Using plaintiff's measurements, the hole would be approximately three feet from either edge of the metal plate, placing plaintiff approximately three feet outside of the marked crosswalk. Plaintiff admitted at her deposition that she crossed the street between the stop line and the furthest east marked line of the crosswalk.

¶ 22 However, plaintiff argues that the City had a duty because she was within an informal crosswalk at the time of her injury since the white lines were not visible due to snow. Plaintiff reasons that if crosswalk lines cannot be seen, the proper inquiry should be whether the

pedestrian was attempting to cross the intersection safely in an area between sidewalk lines and governed by traffic signals.

¶ 23    Section 1-113 of the Illinois Vehicle Code defines "crosswalk" as follows:

"(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway, and in the absence of a sidewalk on one side of the highway, that part of the highway included within the extension of the lateral line of the existing sidewalk to the side of the highway without the sidewalk, with such extension forming a right angle to the centerline of the highway;

(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface placed in accordance with the provisions in the Manual adopted by the Department of Transportation as authorized in Section 11-301." 625 ILCS 5/1-113 (West 2008).

¶ 24    The Illinois Vehicle Code also defines "sidewalk" as "[t]hat portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines, intended for use of pedestrians." 625 ILCS 5/1-188 (West 2008).

¶ 25    Plaintiff contends that a crosswalk exists under either subsection and she was in a *de facto* crosswalk by following the lateral lines of the sidewalk based on subsection (a). She relies on *Kavales v. City of Berwyn*, 305 Ill. App. 3d 536 (1999), to support her argument.

¶ 26    In *Kavales*, the plaintiff's decedent was walking on the sidewalk and entered an alley where it intersected with the sidewalk. The decedent crossed the alley within the lateral lines of the sidewalk. While crossing the alley, the decedent stepped into "a depressed, uneven, and cracked portion of the pavement" and sustained serious injuries. *Kavales*, 305 Ill. App. 3d at 539. The trial court granted the City of Berwyn's motion for summary judgment, finding that no duty was owed to the decedent.

¶ 27    On appeal, the reviewing court considered whether the decedent was an intended and permitted user of the public alley where it intersected with the public sidewalk. *Kavales*, 305 Ill. App. 3d at 540. Generally, " 'an alley is a roadway designed for vehicular traffic, and the duty imposed upon a municipality under section 3-102(a) is the same as that imposed for a street.' " *Kavales*, 305 Ill. App. 3d at 540 (quoting *Khalil v. City of Chicago*, 283 Ill. App. 3d 161, 163-64 (1996)). However, the *Kavales* court found this to be distinguishable because it was undisputed in *Khalil* that the plaintiff's decedent was walking down the middle of the alley. *Kavales*, 305 Ill. App. 3d at 540-41 (citing *Khalil*, 283 Ill. App. 3d at 162).

¶ 28    The court considered section 1-113's definition and concluded that "a piece of property may constitute a 'crosswalk' if it meets the requirements of either, not both, section (a) or section (b)." *Kavales*, 305 Ill. App. 3d at 542. However, another section of the Illinois Vehicle Code specifically excluded the junction of an alley with a street as an intersection and, thus, the plaintiff's decedent was not within a statutory crosswalk. *Kavales*, 305 Ill. App. 3d at 542-43 (citing 625 ILCS 5/1-132 (West 1994)). The reviewing court looked to the intended use of the property and after reviewing another provision of the Illinois Vehicle Code, the court

concluded that the plaintiff's decedent was in a sidewalk area intended for pedestrians and was an intended and permitted user. *Kavales*, 305 Ill. App. 3d at 544 (citing 625 ILCS 5/11-1205 (West 1994)). The court reversed the grant of summary judgment in favor of the City of Berwyn. *Kavales*, 305 Ill. App. 3d at 550.

¶ 29       This case is distinguishable from *Kavales*. Contrary to plaintiff's assertion, the reviewing court did not reverse the grant of summary judgment because the decedent was in an unmarked crosswalk. There, the plaintiff's decedent was within the lateral lines of the sidewalk and was an intended user of the alley at that junction. Here, plaintiff was not an intended user of the street outside of a marked crosswalk.

¶ 30       The record does not support plaintiff's argument that the facts present an issue of an unmarked crosswalk. It is undisputed that there is a marked crosswalk at the intersection. Plaintiff asserts on appeal that the crosswalk lines were "invisible" because of snow. However, her deposition testimony described the snow as a "dusting" with less than half an inch accumulation and her vision was not affected. Plaintiff also points out that she attempted to cross the street within the heavy flow of pedestrian traffic. However, it is the intent of the municipality and the intended use of the property that are at issue. Here, the City did not intend for pedestrians to cross outside of a marked crosswalk and the street, even that portion close to the crosswalk, was not intended for pedestrians. While it may be foreseeable that pedestrians would cross the street outside of the crosswalk, the supreme court has made it clear that foreseeability does not change the intended use.

> "Foreseeability alone, however, is not the standard for determining whether a duty of care exists here. Section 3-102(a) of the Tort Immunity Act does not base duty solely on foreseeable users, but upon intended and permitted foreseeable users." *Wojdyla*, 148 Ill. 2d at 428.

See also *Vaughn*, 166 Ill. 2d at 161 (recognizing that a pedestrian who crosses the street midblock, outside of a crosswalk, is not an intended user).

¶ 31       At oral argument, plaintiff relied primarily on the supreme court decisions, *Marshall v. City of Centralia*, 143 Ill. 2d 1 (1991), and *Curatola*, to support her position that it was reasonably foreseeable that pedestrians would walk outside of the marked crosswalk when snow rendered the crosswalk lines invisible. However, both of these cases are distinguishable from the issues on appeal.

¶ 32       In *Marshall*, the plaintiff was injured when he stepped into an open sewer manhole in a parkway. The plaintiff had been walking on the sidewalk when he observed that the sidewalk was covered with mud and no clean path existed. He then stepped into the parkway and was injured. *Marshall*, 143 Ill. 2d at 4. The trial court granted summary judgment in favor of the defendant, finding no duty, but the appellate court reversed, holding that the city had a duty to cover open manholes. *Marshall*, 143 Ill. 2d at 5. The supreme court found that the plaintiff was an intended and permitted user of the parkway, noting that "parkways have historically been used by pedestrians in a number of limited instances: *i.e.*, to enter a car that is parked at the curb; to retrieve mail from a mailbox; to reach a neighbor's house across the street; to board a bus; to stand on so that others can pass you on the sidewalk; to cut the lawn; to trim the shrubs; and to rake the leaves." *Marshall*, 143 Ill. 2d at 10. The *Marshall* court specifically declined to

analogize the case at bar with cases involving jaywalkers. *Marshall*, 143 Ill. 2d at 7. The supreme court further noted that the duty of care with regard to parkways was less than with sidewalks.

> "Pedestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk. Sidewalks are generally made of cement, while parkways are composed of sod and earth and are therefore more susceptible to weather damage caused by rain and snow. [Citation.] Municipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous. [Citation.] 'However a city has no right to maintain anything in the nature of a pitfall, trap, snare or other like obstruction whereby the traveler, in yielding to the impulse of the average person to cut across a corner in a hurry, may be injured ***.' " *Marshall*, 143 Ill. 2d at 10-11 (quoting *Castro v. Sutter Creek Union High School District*, 77 P.2d 509, 514 (Cal. Dist. Ct. App. 1938)).

¶ 33    In *Curatola*, the plaintiff was injured when he stepped from the back of his lawfully parked semitruck into a pothole in the street while making a delivery. *Curatola*, 154 Ill. 2d at 204. The trial court granted summary judgment in favor of the city, finding that the plaintiff was not an intended and permitted user and the city owed no duty to a pedestrian who steps off a curb and into the street where no crosswalk exists. The appellate court affirmed the grant of summary judgment. *Curatola*, 154 Ill. 2d at 204-05. The supreme court reversed and concluded that the plaintiff was an intended and permitted user of the street immediately surrounding his parked truck. His "use of this area of the street was mandated by virtue of the fact that he had parked his vehicle and had to exit or reenter it." *Curatola*, 154 Ill. 2d at 215-16. In considering the imposition of this duty on a municipality, the supreme court reasoned "that public policy and social considerations of these times and of our community require that a duty to maintain the immediate street around lawfully parked vehicles be placed upon local governmental entities." *Curatola*, 154 Ill. 2d at 215. However, the supreme court expressly stated that "[t]he narrow exception" recognized in the case involved "only the permitted and intended use of the street immediately around a legally parked vehicle by its exiting and entering operators and occupants." *Curatola*, 154 Ill. 2d at 213.

¶ 34    Neither *Marshall* nor *Curatola* involved a crosswalk. In contrast, plaintiff had a legally permitted way to cross the street, but did not cross within the marked crosswalk. Unlike *Marshall*, her path through the marked crosswalk was not prevented by an obstacle, nor was the area outside of the crosswalk intended to be used by pedestrians, as contrasted with a parkway next to a sidewalk. Further, the limited exception outlined in *Curatola* does not support plaintiff's position because the legally intended path for pedestrians is the crosswalk. The *Curatola* exception imposes a duty to a municipality for parking lanes and not the entire street, similarly a duty exists to maintain crosswalks for pedestrian use, not the area outside of the crosswalk. The supreme court has observed that "except for those cases in which street defects were in the area immediately around a parked vehicle, Illinois courts have refused to impose a duty on municipalities for injuries to pedestrians which were caused by those defects." *Vaughn*, 166 Ill. 2d at 163.

¶ 35        In *Vaughn*, the plaintiff was walking on the sidewalk when it ended midblock, she crossed the street outside of a crosswalk, to continue on the sidewalk on the other side. When she attempted to cross the street, plaintiff stepped in a hole and was injured. *Vaughn*, 166 Ill. 2d at 157. The trial court dismissed the complaint, finding the city had no duty, but the appellate court found a duty to maintain the streets and reversed. *Vaughn*, 166 Ill. 2d at 157. The supreme court reversed, holding that the plaintiff was not an intended user of the street. The court found the plaintiff's reliance on *Curatola* to be distinguishable. The *Vaughn* court clarified that in *Curatola*, "it was impossible for the pedestrian to access the vehicle or the sidewalk without walking in the street," whereas it was not impossible for the plaintiff to reach her destination without crossing outside of a crosswalk. (Emphasis omitted.) *Vaughn*, 166 Ill. 2d at 161-62.

¶ 36        "Although we are sympathetic to plaintiff's injuries, the Illinois legislature has established a clear public policy to immunize government from the financial burdens of preventing injuries which occur as a result of unintended uses of the streets." *Vaughn*, 166 Ill. 2d at 164. The supreme court concluded by stating:

>        "In this opinion we do not mandate that all pedestrians always cross our public roadways solely within the provided crosswalks. We simply hold that local municipalities owe no duty to maintain streets and roadways in a reasonably safe condition for pedestrians who choose to cross the street outside the protection of the crosswalks." *Vaughn*, 166 Ill. 2d at 164.

¶ 37        Under the aforementioned authority, it is the intent of the municipality that determines the intended use of the property. Here, the City had a marked crosswalk for pedestrian traffic. Plaintiff has not cited any authority to support her assertion that the weather should affect the intended and permitted users of the street and crosswalk. The City's intent was not altered by the presence of snow. The City set forth a marked crosswalk for pedestrian traffic, the rest of the street was intended for vehicle use only. Further, the statutory definition of a crosswalk uses the lateral lines of the sidewalk and curbs to delineate an unmarked crosswalk, but it makes no exception for the weather or any other instance in which the marked lines are obscured. Our reading of the relevant cases does not suggest that an exception should be created when the weather diminishes visibility or renders the crosswalk invisible. Since plaintiff was injured while crossing outside of a marked crosswalk, she was not an intended user of the street. Accordingly, the City did not owe plaintiff a duty.

¶ 38        However, even if we were to consider whether plaintiff crossed in an unmarked crosswalk, which we do not find, our conclusion would not change. Assuming that the crosswalk lines were not visible because of snow, plaintiff asserts that she crossed within other markers of a crosswalk, such as the lateral lines of the sidewalk. In her affidavit, plaintiff stated that she "was between the end of the curb for Wacker to the west, and the building line for the building on the northeast corner of Adams and Wacker to the east." First, we point out that the statutory definition for sidewalk measures from the property line, not the building line. See 625 ILCS 5/1-188 (West 2008). Plaintiff never asserts that she was within the lateral property lines at the intersection for an unmarked crosswalk. Further, plaintiff failed to present any evidence to support her position that the metal plate where she fell was located within the lateral lines of

the sidewalk. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 39 Additionally, the photograph exhibit identified by plaintiff shows that the sidewalk line continues with the more eastern crosswalk line, which is the line closest to the metal plate. The junction of the other western crosswalk line and the sidewalk is not visible in the photograph. Even if the crosswalk was not visible, the lateral sidewalk line corresponded with the crosswalk. As noted, plaintiff has not presented any evidence to establish that the center of the metal plate, the location of her fall, was within an unmarked crosswalk. Further, plaintiff has not shown that a question of material fact exists in this case as to the location of her fall that requires us to remand to the trial court. Plaintiff conceded at oral argument that where she fell was outside of the formal crosswalk lines. Nothing in her deposition and affidavit or White's affidavit creates a question of material fact on that issue. While we are sympathetic to plaintiff's case, given her injuries, Illinois case law does not set forth a duty in this instance. Since plaintiff has failed to set forth a duty owed by the City, the trial court properly granted the City's motion for summary judgment.

¶ 40 Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 41 Affirmed.