2023 IL App (1st) 221047-U

No. 1-22-1047

Order filed April 26, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CHERON LESSMEISTER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 9012 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Honorable |
| | ) | Preston Jones, Jr., |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We affirm the grant of summary judgment in favor of defendant because the parties do not dispute that plaintiff was not using a crosswalk when she was injured while crossing a street in downtown Chicago. Defendant owed plaintiff no duty of care because she was not an intended and permitted user of the street outside the crosswalk, and plaintiff cannot establish defendant's liability for negligence as a matter of law.

¶ 2  Plaintiff, Cheron Lessmeister, appeals the trial court's grant of summary judgment to

defendant, the City of Chicago (the City), in this negligence action. Plaintiff was injured when she

fell while attempting to cross West Adams Street in downtown Chicago. The parties do not dispute that plaintiff attempted to cross the street outside of a crosswalk. The trial court granted summary judgment for the City because plaintiff was not an intended and permitted user of the street where she attempted to cross it, so she could not establish that the City owed her a duty of care. On appeal, plaintiff argues that the trial court's grant of summary judgment was in error because the location where she attempted to cross Adams was part of an "expanded" crosswalk that existed due to heavy foot traffic in the marked crosswalk. She also contends that the City had prior notice of a pothole near the location where she was injured. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      Plaintiff sued the City for negligence, alleging that she tripped in a hole while crossing the street near the intersection of West Adams Street and South Wacker Drive in downtown Chicago on August 16, 2018. Plaintiff injured her leg and ankle. She claimed that the City negligently failed to maintain the pavement on which she fell.

¶ 5      During discovery, in response to the City's demand for a bill of particulars, plaintiff identified the location of her injury as "on West Adams Street, near the building with the address of 150 South Wacker Drive."[1] She attached 23 photographs that, according to her, show the condition that caused her injury. These photographs depict two defects in the pavement of a street abutting the curb. The defects are not in a crosswalk, but a crosswalk is visible some distance away. One defect is a triangular divot, and the other is a narrow crack parallel to the curb. The

---

[1] Section 2-607 of the Code of Civil Procedure provides that, "[w]ithin the time a party is to respond to a pleading, that party may, if allegations are so wanting in details that the responding party should be entitled to a bill of particulars, file and serve a notice demanding it." 735 ILCS 5/2-607 (West 2018).

defects appear to contain crumbled pavement, dirt, and cigarette butts. There are markings in red spray paint on the sidewalk above the defects.

¶ 6    At her deposition, plaintiff testified that she attended a work event in downtown Chicago on August 16, 2018. After the event, during the afternoon rush hour, she walked toward Union Station to take a train home to the suburbs. Plaintiff walked southbound on Wacker and reached the intersection with Adams. "[T]here were a lot of people in the crosswalk" at the intersection of Wacker and Adams, so plaintiff turned right and "walked a few steps west on Adams." She stepped off the sidewalk to cross Adams and fell. Plaintiff testified as follows:

"Q. Am I right that the reason why you didn't use the crosswalk is because you thought it was crowded?

A. Yes.

Q. So because it was crowded, it was your intention to then walk a little bit more west on Adams and cross the street outside of the crosswalk?

A. Yes.

Q. And that is what you did?

A. Yes."

Plaintiff fell "immediately" when she stepped off the curb and into the street. She did not know what caused her to fall. Plaintiff testified that there was "another crosswalk where [she] could have crossed the street to get to the entrance of the train station." After plaintiff fell, her friend, who was walking with her, called 911. Plaintiff was transported to the emergency room at Rush University Hospital, where she had surgery to repair fractures in her leg. She also suffered a dislocated ankle.

¶ 7  Plaintiff deposed Timothy Gatheright, an asphalt foreman employed by the City. Based on his review of City records, Gatheright testified that the City received a complaint of a pothole at 400 West Adams on October 9, 2017, and dispatched a crew to repair it on October 18, 2017. However, no pothole at that location was filled because the foreman assigned to that job determined that no work needed to be done.

¶ 8  The City moved for summary judgment. First, the City argued that there was no dispute that plaintiff crossed the street outside of a crosswalk, so she was not an intended user of the street at the location and the City owed her no duty of care. Second, the City argued that plaintiff could not establish what proximately caused her fall. In response, plaintiff contended that the City had notice of a pothole near 400 West Adams approximately a year prior to her injury but failed to repair it. Plaintiff argued that this inaction was a breach of the City's duty to her regardless of whether she was in a crosswalk. The court granted summary judgment, finding that the City did not owe plaintiff a duty of care because she was crossing the street outside the crosswalk.

¶ 9  Plaintiff timely appealed.

¶ 10                              II. ANALYSIS

¶ 11  On appeal, plaintiff contends that the trial court erred in granting summary judgment for the City for two reasons. First, the area of the street in which she was injured was part of an "expanded" crosswalk due to heavy foot traffic in the marked crosswalk. Second, the City had notice of a pothole on the 400 block of West Adams in October 2017, but failed to repair it prior to plaintiff's injury.

¶ 12  Summary judgment is warranted when the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact, and the moving party is entitled to

judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Summary judgment should only be granted if the moving party's right to judgment is clear and free of doubt. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). It should not be granted if there is a dispute of material fact, or if the undisputed material facts could lead reasonable factfinders to different conclusions. *Id.* We review the trial court's grant of summary judgment *de novo* (*id.*), meaning that we perform the same analysis that the trial court performed (*Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)). We construe the record strictly against the movant and liberally in favor of the nonmovant. *Forsythe*, 224 Ill. 2d at 280.

¶ 13    To establish that a defendant was negligent, a plaintiff must prove that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995). "Absent a legal duty of care owed to the plaintiff, the defendant cannot be found negligent." *Ballog v. City of Chicago*, 2012 IL App (1st) 112429, ¶ 20 (citing *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999)). Whether a defendant owed a plaintiff a duty of care is a question of law for the court to resolve. *Vaughn*, 166 Ill. 2d at 158. Pursuant to Illinois' Tort Immunity Act, a municipality has a duty to

> "exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2018).

So, the City owes a duty of ordinary care only to those who are intended and permitted users of municipal property. See *Alave v. City of Chicago*, 2022 IL App (1st) 210812, ¶ 24 (not yet released

for publication and subject to revision or withdrawal); see also *Vaughn*, 166 Ill. 2d at 163 ("[W]hether a municipality owes a duty *** depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so.") " '[W]hether a particular use of property was permitted and intended is determined by looking to the nature of the property itself.' " *Harden v. City of Chicago*, 2013 IL App (1st) 120846, ¶ 19 (quoting *Vaughn*, 166 Ill. 2d at 162-63). In general, the relevant factors are: "(1) foreseeability that the defendant's conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon the defendant." *Curatola v. Village of Niles*, 154 Ill. 2d 201, 214 (1993). "Because the [Tort Immunity] Act is in derogation of the common law, it must be strictly construed against the local public entity." *Id.* at 208.

¶ 14    This appeal turns on whether plaintiff was an intended and permitted user of the part of the street in which she was injured and, therefore, whether the City owed her a duty of care. The City first contends that plaintiff has forfeited this issue because her brief contains no argument or citation to authority addressing whether she was an intended and permitted user of the street outside of the crosswalk. Plaintiff's brief makes only a perfunctory claim that "the street has the intended use of being an expanded crosswalk" and cites no authority in support of that claim. Underdeveloped contentions such as this one violate Supreme Court Rule 341(h)(7). See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Atlas Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 36. However, plaintiff does attempt to analyze this case in terms of the *Curatola* factors. She suggests that the City's prior notice of a pothole on Adams created a duty to her regardless of whether she used the crosswalk. Moreover, the issue in this appeal is straightforward and the record

is short, so the deficiencies in plaintiff's brief do not hinder our review. See *L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 29 ("[Forfeiture] is an admonition to the parties, not a limitation on the powers of courts of review."). So, we will address the issue of the City's duty to plaintiff on the merits.

¶ 15   Illinois courts have addressed whether pedestrians are intended and permitted users of city streets outside of marked crosswalks. "The general rule *** is that, since pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who attempt to cross a street outside the crosswalks." *Vaughn*, 166 Ill. 2d at 158; see also *Swain v. City of Chicago*, 2014 IL App (1st) 122769, ¶ 16 ("It is well-settled law that a municipality owes no duty to a pedestrian who crosses a public street outside of the crosswalk."). So, "local municipalities owe no duty to maintain streets and roadways in a reasonably safe condition for pedestrians who choose to cross the street outside the protection of the crosswalks." *Vaughn*, 166 Ill. 2d at 164.

¶ 16   The parties do not dispute that plaintiff attempted to cross Adams outside of a crosswalk. This exchange from plaintiff's deposition is decisive:

> "Q. So because it was crowded, it was your intention to then walk a little bit more west on Adams and cross the street outside of the crosswalk?
>
> A. Yes.
>
> Q. And that is what you did?
>
> A. Yes."

Even construing the record strictly in plaintiff's favor, as we must (see *Forsythe*, 224 Ill. 2d at 280), there is no way to interpret this testimony as anything other than an admission that plaintiff

saw a crosswalk for pedestrians to cross Adams but decided to cross Adams outside the crosswalk instead. As a matter of law, plaintiff cannot establish that she was an intended and permitted user of the area of the street in which she was injured. Therefore, she cannot establish that the City owed her a duty of care, and the City is entitled to summary judgment. See *Scerba v. City of Chicago*, 284 Ill. App. 3d 435, 438 (1996) (when the plaintiff "left the safety of the sidewalk and walked onto the middle of Sheridan Road, he was neither an intended [n]or [a] permitted user of the roadway. The City owed him no duty of ordinary care.").

¶ 17     Plaintiff acknowledges that the City "has no duty to a pedestrian injured because of walking *** outside of the crosswalk." However, she argues that "an intersection such as West Adams and South Wacker that is near Union Train Station *** has the intended use of being an expanded crosswalk" when the marked crosswalk is not large enough to accommodate rush hour foot traffic. Plaintiff cites no authority for her claim that a marked crosswalk can "expand" to include other areas of the street if the crosswalk is crowded with pedestrian traffic. We have found no such authority. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417 (1993), does suggest that an unmarked intersection can function as a crosswalk "by custom." *Wojdyla*, 148 Ill. 2d at 426. However, that case also indicates that an unmarked midblock area of a street is never intended or permitted for pedestrian use. *Id.* To the extent that plaintiff suggests that she crossed Adams near enough to the intersection with Wacker such that she was using a crosswalk "by custom," her deposition testimony indicates otherwise. Plaintiff testified that she reached the intersection of Wacker and Adams, turned the corner, walked west on Adams, and *then* entered the street midblock. So, even under *Wojdyla*, her crossing of Adams was not intended or permitted.

¶ 18    Plaintiff also contends that the City received notice of a pothole on the 400 block of West Adams in October 2017, but failed to repair it before she was injured. Plaintiff cites Gatheright's deposition testimony in support of this argument. She implies that her injury was foreseeable to the City, so, under *Curatola*, the City owed her a duty to repair the defect that caused her injury. Accepting this argument would essentially require us to overrule *Vaughn*, which established the clear rule that a pedestrian who crosses a city street outside of a crosswalk is not an intended or permitted user of the street. We decline to depart from the rule of *Vaughn*.

¶ 19    *Harden* guides our reasoning. In *Harden*, the plaintiff attempted to cross Adams near the intersection with Wacker "between the stop line and *** the furthest east marked white line of the crosswalk." *Harden*, 2013 IL App (1st) 120846, ¶ 6. As the plaintiff stepped off the curb and into the street, she fell and was injured. *Id.* The plaintiff believed that her foot got caught on a metal plate on the street but was not certain. *Id.* She sued the City for negligence, and the City moved for summary judgment, arguing that she "was not an intended and permitted user of the street when she crossed Adams Street outside of the marked crosswalk lines." *Id.* ¶¶ 1, 9. In response, the plaintiff argued that she could not see the crosswalk because of heavy pedestrian traffic and a dusting of snow. *Id.* ¶ 10. The trial court granted summary judgment for the City, finding that the plaintiff's deposition testimony and photographs established that she crossed Adams outside of the marked crosswalk, so she was not an intended and permitted user of the street where she fell. *Id.* ¶ 12. We affirmed on the same basis. *Id.* ¶¶ 37, 41.

¶ 20    This case is almost identical to *Harden*. Both cases occurred at the same intersection, Wacker and Adams. Both plaintiffs admitted that they tried to cross Adams outside of a marked crosswalk. Both plaintiffs cited heavy pedestrian traffic in the crosswalk as a reason for not using

it. Both plaintiffs fell and were injured as soon as they stepped off the curb but could not pinpoint what caused their injury. The factual similarity that this case has with *Harden* warrants the same outcome. The City is entitled to summary judgment because plaintiff was not an intended and permitted user of Adams outside the marked crosswalk.

¶ 21 The cases that plaintiff cites are distinguishable and do not warrant reversal. Three such cases did not involve pedestrians crossing city streets. *Monson v. City of Danville*, 2018 IL 122486; *Ward v. K Mart Corporation*, 136 Ill. 2d 132 (1990); *Christakes v. SP Plus Corporation*, 2018 IL App (1st) 172675-U.[2] *Waters v. City of Chicago*, 2012 IL App (1st) 100759, did involve a plaintiff who tripped over a barricade at the entrance to a crosswalk, but it dealt with the applicability of the open and obvious doctrine and the distraction exception, neither of which are at issue in this case. See *Waters*, 2012 IL App (1st) 100759, ¶¶ 1-5. None of these cases support departing from the well-established rule of *Vaughn* and its progeny that, when a pedestrian crosses a city street outside of a crosswalk, the city does not owe that pedestrian a duty and cannot be held liable for negligence. Accordingly, we affirm the grant of summary judgment in favor of the City.

¶ 22                                                    III. CONCLUSION

¶ 23 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24 Affirmed.

---

[2] *Christakes* is an unpublished order under Supreme Court Rule 23, so we cannot rely on it, and plaintiff cannot cite it, "except to support contentions of double jeopardy, *res judicata*, collateral estoppel, or law of the case," or as persuasive authority if the order was issued after January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021). Plaintiff does not cite *Christakes* for any of these purposes.